Filed 10/17/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STARVIEW PROPERTY, LLC,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STEPHEN Y. LEE et al.,<br><br>    Defendants and Appellants. | B292245<br><br>(Los Angeles County<br>Super. Ct. No. SC127365) |

APPEAL from an order of the Superior Court of Los Angeles County. Gerald Rosenberg, Judge. Reversed and remanded with directions.

Davis Wright Tremaine, Mary H. Haas and Rochelle L. Wilcox for Defendants and Appellants.

McGarrigle, Kenney & Zampiello, Patrick C. McGarrigle and Marianne Fratianne for Plaintiff and Respondent.

———————————————

In this acrimonious dispute between neighbors over a driveway easement, defendants Stephen and Tracy Lee appeal the trial court's denial of a motion pursuant to Code of Civil Procedure section 425.16, the anti-SLAPP statute,[1] directed at three claims plaintiff Starview Property, LLC asserted for the first time in its first amended complaint. Although the Lees' motion was timely filed within 60 days after the filing of the amended complaint, the trial court denied the motion as untimely because the new claims were based on facts alleged in the original complaint and the motion was filed more than 60 days after service of the original complaint. (Code Civ. Proc., § 425.16, subd. (f) [60-day deadline to file motion after service of "complaint"].)[2]

The court erred. An anti-SLAPP motion may be brought within 60 days of service of an amended complaint " 'if the amended complaint pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.' " (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 641 (*Newport Harbor II*).) Starview's three newly pled causes of action in its amended complaint plainly could not have been the target of a prior motion, even if they arose from protected activity alleged in the original complaint. We reverse the court's order.

---

[1] SLAPP stands for "strategic lawsuits against public participation. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 614 (*Rand*).)

[2] All undesignated statutory citations are to the Code of Civil Procedure.

We express no views on the merits of the motion and remand for the court to consider the merits in the first instance.

## BACKGROUND

The parties own neighboring parcels of land in Brentwood—Starview owns 816 Glenmere Way (the 816 property) and the Lees own 815 Glenmere Way (the 815 property). In 1958, the Lees' predecessor granted an easement to Starview's predecessor over a driveway entirely situated on the Lees' property for ingress, egress, and driveway purposes. In 1959, the parties' predecessors modified the easement with an agreement containing this clause: "Should any further documents be necessary to be placed of record for the purpose of perfecting title to the matters set forth in this agreement, the parties hereto mutually agree to execute such additional documents."

In 2016, Starview purchased the 816 property, and it intended to remodel the existing home. In 2017, it submitted architectural plans to the City of Los Angeles (the City). As a condition of permit approval, the City required Starview to sign a Covenant and Agreement for Community Driveway and to secure the Lees' signature on the document as well. The document was required because anyone accessing one of the five required parking spaces on Starview's property would have to use the driveway on the Lees' property.

The Lees declined to sign the covenant. Starview alleged the Lees claimed they were entitled to new consideration and to condition their performance on extra-contractual demands for indemnity, construction, releases, and payment of $5,000. Starview eventually installed a vehicle lift system that was

3

approved by the City, which avoided the parking problem and avoided requiring the Lees to sign the Covenant.

Starview filed the original complaint on April 11, 2017, alleging three contract-based claims: (1) breach of contract; (2) specific performance; and (3) injunctive relief. All three claims were based on the Lees' failure to sign the covenant in breach of the easement agreement. The Lees did not file an anti-SLAPP motion to strike any of these causes of action.

The parties conducted some discovery and filed motions for summary judgment/adjudication. Then, over a year after filing the original complaint, Starview filed a first amended complaint (FAC) on May 17, 2018. The FAC added factual detail but alleged the same basic acts of the Lees refusing to sign the covenant in breach of the easement agreement and making extra-contractual demands for additional concessions and consideration. The FAC realleged causes of action for breach of contract and injunctive relief, but added claims for breach of the implied covenant of good faith, negligent and intentional interference with easement, and private nuisance. The newly added claims were based on both the Lees' failure to sign the covenant and on their extra-contractual demands.

On July 11, 2018—55 days after the FAC was deemed filed—the Lees filed their anti-SLAPP motion. It sought to strike the newly added causes of action for breach of the implied covenant of good faith and for negligent and intentional interference with easement. Alternatively, it sought to strike certain factual allegations of "pre-litigation communications" related to the Lees' extra-contractual demands, including factual allegations that appeared in the original complaint. In the motion, the Lees argued their failure to sign the covenant and

4

their pre-litigation communications were protected activity, and Starview could not prevail on the three new claims.

In opposition, Starview argued the motion was untimely because the claimed protected activity was alleged in the original complaint and the motion was filed more than 60 days after the original complaint was served. Starview also opposed the motion on the merits.

The trial court denied the motion as untimely because the original complaint alleged "the same protected conduct subject to SLAPP raised by Defendants in this motion," which was the Lees' refusal to sign the covenant and the Lees' demand for additional consideration to sign the covenant. In the court's view, the FAC "did not reopen the time to file a SLAPP; Defendants were required to bring any SLAPP motion within 60 days of being served with the original Complaint, or by July 2, 2017." The court did not reach the merits of the motion.

The Lees appealed the court's order.

## DISCUSSION

### A. The Lees' Anti-SLAPP Motion Was Timely

The anti-SLAPP statute creates a procedure to "resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest." (*Newport Harbor II, supra,* 4 Cal.5th at p. 639.) To that end, a court may strike a cause of action if it "(1) arises from an act in furtherance of the right of petition or free speech 'in connection with a public issue,' and (2) the plaintiff has not established 'a probability' of prevailing on the claim." (*Rand, supra,* 6 Cal.5th at pp. 619–620; see § 425.16, subd. (b)(1).) An anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper."

5

(§ 425.16, subd. (f).)[3]  The trial court's determination that the Lees' motion was untimely is a question of law we review de novo. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1219, review granted March 22, 2017, S239777, affirmed 4 Cal.5th 637 (*Newport Harbor I*).)[4]

In *Newport Harbor II*, the California Supreme Court interpreted section 425.16, subdivision (f), to "permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion)." (*Newport Harbor II, supra,* 4 Cal.5th at p.

---

[3]  The 60-day clock to file an anti-SLAPP motion runs from the service of a complaint, but the record does not reflect when either the original or the FAC complaints were served.  The parties base their arguments on the filing dates.  Since any time difference between filing and service does not impact their positions or our analysis, we will do the same.

[4]  Starview argues we must review for abuse of discretion, but the cases it cites all involved the trial court's exercise of statutory discretion to permit the filing of an untimely anti-SLAPP motion. (See *Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1187 (*Hewlett-Packard*); *Kunysz v. Sandler* (2007) 146 Cal.App.4th 1540, 1542–1543; *Morin v. Rosenthal* (2004) 122 Cal.App.4th 673, 681.)  Here, we are concerned with whether the Lees' motion was timely filed in the first instance, a legal question about the proper interpretation and application of section 425.16, subdivision (f).  Even if we reviewed for abuse of discretion, a court abuses its discretion if " 'the grounds given by the court . . . are inconsistent with the substantive law of section 425.16.' " (*Hewlett-Packard, supra,* at p. 1187.)  As we explain, that occurred here.

645.)  An anti-SLAPP motion directed at an amended complaint "could not have been brought earlier" if " 'the amended complaint pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.' " (*Id.* at p. 641, quoting *Newport Harbor I, supra,* 6 Cal.App.5th at p. 1219.)

Starview defends the trial court's ruling by arguing the Lees' motion could have been brought earlier because the newly alleged claims rest on previously alleged facts.  Starview's position, as well as the trial court's ruling, misunderstand anti-SLAPP law and *Newport Harbor II.*

By its terms, the anti-SLAPP statute is directed at striking *causes of action*, not merely factual allegations.  (See *Baral v. Schnitt* (2016) 1 Cal.5th 376, 394 (*Baral*) ["Allegations of protected activity that merely provide context, without supporting a claim for recovery, cannot be stricken under the anti-SLAPP statute."]; see also *Rand, supra,* 6 Cal.5th at p. 621 ["But to prevail on an anti-SLAPP motion, a defendant must do more than identify some speech touching on a matter of public interest.  As we have explained, ' "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." ' "].)  That is why causes of action under the anti-SLAPP statute have been defined as "*claims for relief* that are based on allegations of protected activity." (*Baral, supra,* at p. 396, italics added.)  Here, Starview may have asserted the alleged protected activity in the original complaint, but it did not assert the challenged "claims for relief" until the FAC.  The Lees could not have brought a motion

7

to strike *those claims* from the original complaint because they did not exist to be stricken.

Stated in the context of anti-SLAPP law, "[a] claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062 (*Park*).) Hence, claims subject to the anti-SLAPP statute contain two components: allegations of protected activity, and a legal claim for relief *arising from* that protected activity. (*Rand, supra,* 6 Cal.5th at p. 620 [first step of anti-SLAPP analysis requires defendant to show "the 'conduct by which plaintiff claims to have been injured falls within one of the four categories' " of protected activity defined in the statute, and "that the plaintiff's claims in fact *arise* from that conduct"]; see *Park, supra,* at p. 1062.)

Starview's argument ignores the "arising from" component. When a plaintiff has alleged protected activity, but no corresponding legal theory for relief, there is no claim arising from anything, let alone one arising from protected conduct. (*Baral, supra,* 1 Cal.5th at p. 394.) It is not even possible to assess the application of the anti-SLAPP statute in that scenario. To determine whether a claim arises from protected activity, a court—and a defendant when considering whether to file an anti-SLAPP motion in the first instance—"should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at p. 1063.) This analysis is impossible when the "claim" half of that comparison is missing. As a matter of law and common sense, an anti-SLAPP motion cannot be brought to strike a claim until the plaintiff asserts it. That may occur for the first time in an amended complaint, and

8

an anti-SLAPP motion directed at newly asserted claims, even if based on previously alleged facts, would be timely if filed within 60 days of service of the amended complaint.

*Newport Harbor II* arose in the same basic factual context and confirms this conclusion. In that case, the plaintiff had filed an original complaint and several amended complaints, all of which alleged the defendants fraudulently settled an unlawful detainer action. (*Newport Harbor II, supra,* 4 Cal.5th at p. 640.) The first and subsequent complaints alleged multiple causes of action, including breach of contract and breach of the implied covenant of good faith. The third amended complaint continued to allege the defendants fraudulently settled the unlawful detainer action and realleged the two previously pled claims, but it added two causes of action for quantum meruit and promissory estoppel. (*Id.* at p. 640.) The trial court denied the defendant's anti-SLAPP motion directed at the third amended complaint, noting every complaint " 'referenced the Settlement Agreement at the heart of Defendants' argument.' " (*Ibid.*)

The Court of Appeal held the motion was untimely as to the claims alleged in prior complaints but timely as to the two new causes of action because they "could not have been challenged by an anti-SLAPP motion to a prior complaint." (*Newport Harbor I, supra,* 6 Cal.App.5th at p. 1212.) The Court of Appeal explained an anti-SLAPP motion challenging the prior complaints would not have prevented the plaintiffs "from bringing a lawsuit for quantum meruit and promissory estoppel. That is because an earlier anti-SLAPP motion would not necessarily have resolved whether [the plaintiffs] could demonstrate a probability of prevailing on their claims for quantum meruit and promissory estoppel." (*Newport Harbor I, supra,* at p. 1220.)

The California Supreme Court affirmed, accepting the line drawn by the Court of Appeal between an untimely motion challenging existing claims and a timely motion challenging new claims or allegations added in an amended complaint. (*Newport Harbor II,* 4 Cal.5th at p. 646.) The high court did not mention, and was not concerned with, whether the new claims were based on new or existing factual allegations regarding the fraudulent unlawful detainer settlement. The question was simply whether the amended complaint " 'pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.' " (*Id.* at p. 641.)

Starview attempts to distinguish *Newport Harbor II* by arguing the new claims in that case were actually based on newly alleged facts. Starview's reading of *Newport Harbor II* is incorrect. In the Court of Appeal opinion in *Newport Harbor I,* the court analyzed the merits of the plaintiffs' new claims for quantum meruit and promissory estoppel in the second step of the anti-SLAPP analysis. (*Newport Harbor I, supra,* 6 Cal.App.5th at p. 1220.) The court found the new claims were not barred by the applicable statutes of limitations because they related back to prior complaints. (*Id.* at pp. 1222, 1224.) The amended complaint could only relate back to earlier complaints "if the amended complaint is based on the same general set of facts, even if the plaintiff alleges a different legal theory or new cause of action." (*Id.* at pp. 1221–1222.) Thus, the prior complaints *necessarily* alleged the same general set of facts as the third amended complaint, and yet the anti-SLAPP motion was timely as to the newly added claims.

Starview also argues the Lees could have brought their anti-SLAPP motion earlier because their *original* breach of contract-related claims arose from the same protected activity that now underlies the Lees' new claims. In its view, we should focus on the conduct forming the basis for the claims, and not the labels of the alleged causes of action. It cites *Crossroads Investors, L.P. v. Federal National Mortgage Assn.* (2017) 13 Cal.App.5th 757 (*Crossroads*), which stated, "To resolve an anti-SLAPP motion, we do not rely on the form of the complaint or the name of a cause of action. Rather, we determine the conduct from which [the plaintiff's] claims arose and whether that conduct was constitutionally protected." (*Id.* at pp. 780–781.) The court was implicitly referring to *Baral*, in which our high court addressed a so-called "mixed cause of action" involving both protected and unprotected activity, holding the term "cause of action" subject to the anti-SLAPP statute does not depend on the form of the plaintiff's pleadings. (*Baral, supra,* 1 Cal.5th at p. 395.)

The rule announced in *Baral* and *Crossroads* does not apply here. For one thing, in *Newport Harbor II*, our high court rejected the defendants' argument that the court's holding on timeliness required it to overrule *Baral*, which "did not consider the timeliness of any motion to strike or the proper interpretation of section 425.16, subdivision (f)." (*Newport Harbor II, supra,* 4 Cal.5th at p. 646.) Further, the principle from *Baral* and *Crossroads* only comes into play after the plaintiff has asserted a claim for relief that could have arisen from protected activity. As we have made clear, the defendant cannot bring an anti-SLAPP motion strike a claim that has not yet been alleged.

11

There are sound policy reasons for allowing a defendant to challenge newly asserted claims. As *Newport Harbor II* noted, permitting a defendant to challenge newly asserted causes of action with an anti-SLAPP motion prevents a plaintiff from " 'circumvent[ing] the purpose of the anti-SLAPP statute by holding back . . . causes of action from earlier complaints.' " (*Newport Harbor II, supra,* 4 Cal.5th at p. 641.) Accepting Starview's position here would lead to that very result. It would encourage a plaintiff to plead a wide array factual allegations amounting to protected activity, but plead very few legal claims. Once the time to file an anti-SLAPP motion expires, the plaintiff could then amend the complaint to add as many claims as it sees fit arising from the previously pled protected conduct, now immune from an anti-SLAPP motion. Allowing a defendant to attack newly pled legal claims, whether or not based on existing allegations of protected activity, prevents this gamesmanship.

We of course recognize the anti-SLAPP statute was designed to "resolve quickly and relatively inexpensively meritless lawsuits that threaten free speech on matters of public interest." (*Newport Harbor II, supra,* 4 Cal.5th at p. 639.) *Newport Harbor II* understood this problem and barred late motions that could have been brought earlier, given discovery is stayed and the ruling on an anti-SLAPP motion is appealable, which stays all proceedings. (*Id.* at p. 645; see § 425.16, subds. (g), (i); *Hewlett-Packard, supra,* 239 Cal.App.4th at p. 1184 [noting anti-SLAPP motion produces "free time-out" from litigation].) We agree that once litigation and discovery have commenced, "[i]t is far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively." (*Newport Harbor II, supra,* at p. 645.)

12

Yet, *Newport Harbor II* struck a balance by allowing late motions directed only at *new* causes of action to "maximize[] the possibility the anti-SLAPP statute will fulfill its purpose while reducing the potential for abuse." (*Newport Harbor II, supra,* 4 Cal.5th at p. 645.) The parties here may yet streamline the case if the trial court strikes Starview's new claims on remand and narrows the dispute between the parties. On the other hand, if Starview was concerned with the expediency of the case, it was the master of its own pleadings. (*Id.* at p. 646.) It could have chosen to plead all claims initially or avoid adding new claims later, "in which case no anti-SLAPP motion at all would be permitted." (*Ibid.*) Starview's basic position on appeal is that its new claims are the same as its old claims, so it would arguably have lost little by not adding them to the FAC. Allowing the Lees' motion to move forward as to Starview's new claims is fully consistent with the anti-SLAPP statute.

### B. We Decline to Consider the Merits of the Anti-SLAPP Motion in the First Instance

The Lees urge us to consider the merits of their motion, including their evidentiary objections, for the first time on appeal. We decline the invitation. We think it "advisable to remand the matter to the trial court so that it may rule on the outstanding evidentiary and substantive matters in the first instance." (*Birkner v. Lam* (2007) 156 Cal.App.4th 275, 286.)

## DISPOSITION

The order is reversed and the matter remanded for the trial court to consider the merits of the anti-SLAPP motion. Appellants are entitled to costs on appeal.

Starview has moved to dismiss the Lees' appeal as frivolous and requested sanctions. Having found the appeal meritorious, we deny the motion.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.


We concur:


STRATTON, J.


WILEY, J.